IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| **PRAIRIE POINTE ORTHODONTICS, P.A.**, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**JORNS AND ASSOCIATES, LLC, ZEN LIFE HOLDINGS, INC., and JOHN DOES 1-10**,<br><br>Defendants. | Case No. 2:22-cv-2451-JWB-GEB<br><br>**CLASS ACTION** |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*.**
**(TELEPHONE CONSUMER PROTECTION ACT)**

Prairie Pointe Orthodontics, P.A., on behalf of itself and all other persons or entities similarly situated, hereby files this its First Amended Class Action Complaint against the Defendant, Jorns and Associates, LLC, Zen Life Holdings, Inc., and John Does 1-10 for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), and the regulations promulgated under the Act (hereinafter, "TCPA").

**NATURE OF ACTION**

1. This case involves the unauthorized and unsolicited transmission of facsimiles to Prairie Pointe Orthodontics, P.A. (hereinafter, "Prairie Pointe) from Jorns and Associates, LLC (hereinafter "Jorns"), Zen Life Holdings, Inc. ("Zen Life"), and/or persons or entities whose identities are presently unknown ("John Does 1-10") to Prairie Pointe in violation of the TCPA, 47 U.S.C. § 227 *et seq.*

1

2. Jorns, Zen Life, and John Does 1-10 have violated the TCPA by sending, via facsimile, unsolicited advertisements to Prairie Pointe and the putative Class Members without Prairie Pointe's and the putative Class Members' prior express consent within the meaning of the TCPA.

3. Prairie Pointe brings this action for injunctive relief and statutory damages, all arising from the illegal activities of Jorns, Zen Life, and John Does 1-10.

## JURISDICTION AND VENUE

4. The claims of the putative Class represented by Prairie Pointe arise pursuant to the provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005, and the regulations promulgated under the Act (hereinafter, "TCPA"). Therefore, this Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331.

5. This Court has subject matter jurisdiction over this case based on: (1) diversity of citizenship under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the citizenship of the parties is diverse; and (2) federal question jurisdiction per 28 U.S.C. § 1331 over Plaintiff's TCPA claims, which arises under federal law. This Court also may have jurisdiction under the Class Action Fairness Act.

6. This Court has specific personal jurisdiction over Defendant because Defendants targeted consumers with its advertisements in Kansas and this District, including to Plaintiff, who resides in Johnson County, Kansas. Defendants' marketing directed to residents of Kansas is the subject of this dispute from which this lawsuit arises.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the conduct and events giving rise to this case, the transmission of unsolicited fax advertisements directed to and received by residents of Kansas including those sent to Prairie

Pointe, occurred in this District, and Prairie Pointe has its principal place of business in this District.

## PARTIES

8.      Plaintiff Prairie Pointe Orthodontics, P.A., is a domestic corporation of the state of Kansas, owned and operated by Dr. Eric Neuer. Among other business activities, Prairie Pointe Orthodontics, P.A. provides dental services to the residents of the State of Kansas and is hereinafter referred to as "Prairie Pointe."

9.      Defendant Jorns and Associates, LLC is a domestic limited liability company organized under the laws of the state of Wyoming with its principal place of business located at 30 N Gould St STE 23809, Sheridan, WY 8280.  Its registered agent is listed as Registered Agents, Inc., who is listed at the same address.  Defendant Jorns and Associates, LLC is hereinafter referred to as "Jorns." Jorns also appears to have some type of presence in Wichita, Kansas, where Jorns directs certain incoming mail to be delivered.

10.     Defendant Zen Life Holdings, Inc. is a domestic business corporation organized under the laws of New York, with its principle place of business at 401 Kilbourn Road, Rochester, NY 14618.  Its registered agent is listed as Benjamin Wood, who is listed at the same address. Defendant Zen Life Holdings is hereinafter referred to as "Zen Life."  According to documents filed with the State of New York, Zen Life operates under the assumed name of Jorns.

11.     Defendants John Does 1-10 are those persons, corporations, or other legal entities that acted as agents, consultants, independent contractors or representative of Jorns and/or who assisted Jorns in creating, publishing, broadcasting and faxing the document received on the fax machine by Prairie Pointe whose identities at this time are unknown but will be substituted by amendment when ascertained.

12. Defendants Jorns, Zen Life, and John Does 1-10 are hereinafter referred to collectively as "Defendants."

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

13. The Telephone Consumer Protection Act of 1991, Pub. L. 102-243, § 3(a), added Section 227 to Title 47 of the United States Code. 47 U.S.C. § 227 was last amended in 2005. In pertinent part, 47 U.S.C. § 227(b) provides "It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]"

14. In pertinent part, 47 C.F.R. § 64.1200(a), a regulation prescribed under 47 U.S.C. § 227(b) and effective as of December 20, 1992, provides that "No person may . . . [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

15. As used in both 47 U.S.C. § 227 and 47 C.F.R. 64.1200, "[t]he term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission[.]" (47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(16).)

16. Paragraph (3) of 47 U.S.C. § 227(b) provides:

(3) Private right of action

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

      (C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

17.    The Junk Fax Prevention Act of 2005 ("JFPA") amended the TCPA to strengthen the prohibition against the sending of unsolicited advertisements. Following the JFPA, the TCPA requires that senders of faxed advertisements place a clear, conspicuous and particular notice (hereinafter, the "Opt-Out Notice") on the first page of the transmission giving owners of the telephone lines and fax machines the right, and means, to stop unwanted faxed advertisements.

18.    Under the TCPA and associated regulations, a legally compliant Opt-Out Notice must contain the following:

(1) Conspicuous opt-out language on the first page (47 C.F.R. § 64.1200(a)(4)(iii)(A))

(2) A statement that the recipient may make a request to opt-out of receiving future faxed advertisements (47 C.F.R. § 64.1200(a)(4)(iii)(B).)

(3) A statement that the sender must honor a recipient's opt-out request within 30 days and that the sender's failure to do so is unlawful (47 C.F.R. § 64.1200(a)(4)(iii)(B).)

(4) Set forth the requirements for an effective opt-out request (47 C.F.R. § 64.1200(a)(4)(iii)(C)), including that, *inter alia*, the request must (a) identify the number of the fax machine to which the opt-out request relates; and (b) is complaint only if, after the initial opt-out request, the recipient does not provide express permission for the sender to send fax advertisements (*see* 47 C.F.R. § 64.1200(a)(4)(iv).)

(5) Provide a domestic contact telephone number and a fax number by which the recipient may transmit the opt-out request (47 C.F.R. § 64.1200(a)(4)(iii)(D)(1)) or, if those numbers are not toll-free, set out a separate cost-free mechanism for that purpose (47 C.F.R. § 64.1200(a)(4)(iii)(D)(2)).

(6) Ensure that the toll-free numbers or alternative cost-free mechanism permit the recipient to make an opt-out request 24 hours a day, 7 days per week. (47 C.F.R. § 64.1200(a)(4)(E).)

### FACTUAL ALLEGATIONS

19. Prairie Pointe has, and at all relevant times had, fax service at (913) 393-3599 for its offices located at 10044 Woodland Road, Lenexa, Johnson County, Kansas. Prairie Pointe receives facsimile transmissions ("faxes") at that number, using a telephone facsimile machine ("fax machine").

20. On or about October 12, 2022, Prairie Pointe received on its fax machine from Defendants a hard copy advertising fax that solicited Prairie Pointe to call a toll-free number or scan a QR code leading to a website owned and operated by the Defendants, https://www.caresacterc.us/, for the purpose of obtaining assistance with claiming employee retention tax credits ("ERC"). A true and correct copy of that fax is attached hereto as **Exhibit A**.

21. The banner on the website https://www.caresacterc.us/ says "Jorns Cares Act," and the website page contains testimonials from individuals about the services they received from Jorns, as well as an intake form for new customers. The bottom of the page lists the owner operator as https://www.jornsertc.com/, which according to that website's Terms and Conditions, "is operated by Jorns & Associates., a Wyoming corporation." The website, https://www.caresacterc.us/ was registered by an individual named Jason Guck of Victor, New York, on October 21, 2021. Mr. Guck's Facebook page contains several posts from Jorns' Facebook profile (https://www.facebook.com/Jornsacterc) and links to Jorns websites offering assistance to customers in obtaining ERC. Mr. Guck also has a Twitter account, @JasonGuck, which also contains posts encouraging individuals and businesses to click on a link to a Jorns website offering assistance with ERC.

22. Jorns holds itself out on its website, in interviews, on social media and elsewhere as offering its professional services to assist clients with obtaining ERC.

23. Jorns benefitted from the advertising fax received by Prairie Point and the Class because the advertisements were marketing endeavors which promoted Jorns' commercial services and meant to increase Jorns' profits.

24. According to Jorns, the advertising fax was sent by Nootro & Co LLC, d/b/a Metaphase Marketing, at the direction of Zen Life Holdings, Inc.

25. Nootro & Co LLC's website is [https://fax.marketing](https://fax.marketing) and promotes itself with the tagline: "Use Fax Machine Advertising to Grow Your Business. Learn how to turn dinosaur tech from the 90's into a cash flowing machine!"

26. Zen Life Holdings, Inc. operates under the assumed name "Jorns Associates," holds itself out as partnering with Jorns & Associates to offer ERC-related services and advertises Jorns' ERC-related services on both its website and LinkedIn page, as well as on public billboard displays in New York. Zen Life and Jorns also share multiple employees, including Ben Wood (Chief Executive Officer at Zen Life and Executive Partner at Jorns), Stephanie Wood (Director at Zen Life and Senior Associate at Jorns), and Desiree Atallah (Account Manager). In May, 2022, Stephanie Wood appeared on a radio program "Lenz on Business" along with Jorns' founder Tony Swantek to discuss Jorns' ERC-related services.

27. The facts regarding the substantial overlap in the business operations, management and employees of Jorns and Zen Life suggest that they are alter-egos of one another, or alternatively, that they have acted as agents of one another and are single, joint, and/or common enterprises, such that their actions and conduct as alleged herein cannot be distinguished from each other.

28. The advertising fax received by Prairie Pointe from Defendants was wholly unsolicited.

29. There was no established business relationship between Prairie Pointe and Defendants at the time the faxes were sent to Prairie Pointe's fax machine.

30. Defendants are, and at all times mentioned herein were, "persons," as defined by 47 U.S.C. § 153(39).

31. Upon information and belief, Defendants paid for, authorized, and directed the unsolicited and unauthorized faxes to Prairie Pointe and members of the putative Class.

32. The fax contained in **Exhibit A** does not contain an Opt-Out Notice that complies with the requirements of 47 C.F.R. 64.1200(a)(4)(iii).

33. The October 12, 2022 fax in **Exhibit A** does not comply with the TCPA in multiple respects, including but not limited to the following failures:

   (1) The notice does not expressly state that the sender's failure to comply with the initial opt-out request is unlawful. (47 C.F.R. § 64.1200(a)(4)(iii)(B).)

   (2) In violation of 47 C.F.R. §§ 64.1200(a)(4)(iii)(C) and (a)(4)(iv), the fax does not set forth the requirements for an opt request to be effective. For example, the notice fails to state that for an opt out to be effective under the TCPA, it must (a) identify the number of the fax machine to which the opt-out request relates; and (b) is compliant only if, after the initial opt-out request, the recipient does not provide express permission for the sender to send fax advertisements; and

   (3) The notice must identify both a toll-free number *and* a fax number for the recipient to submit an opt-out request. However, in violation of 47 C.F.R. § 64.1200(a)(4)(iii)(D)(1)), the notice fails to include a fax number for that purpose.

34. Defendants, and/or their employees and/or agents, created the fax in **Exhibit A** and had the capability to control the contents thereof.

35. Defendants, and/or their employees and/or agents, determined the fax telephone numbers to which the fax contained in **Exhibit A** and substantially-similar advertising faxes offering Defendants' business services were sent to Prairie Pointe and other recipients.

36. Upon information and belief, Defendants sent the fax transmissions of **Exhibit A** and substantially similar advertising faxes to hundreds, if not thousands, of telephone facsimile machines located in Kansas and other states offering their business within the last four years prior to the filing of the Complaint.

37. Said transmissions of the fax contained in **Exhibit A** and substantially similar advertising faxes were made for the purpose of advertising the commercial availability of goods and services available from Defendants.

38. Prairie Pointe further alleges that in each instance Defendants did so willfully or knowingly.

39. Prairie Pointe further alleges on information and belief that in each instance Defendants had actual notice of participation, or a high degree of involvement, in a plan to transmit unsolicited advertisements to telephone facsimile machines (by, for example, knowing the that the transmitted faxes were advertisements or participating in preparing their content, providing or obtaining the fax telephone number of Prairie Pointe or other recipients, and knowing that Plaintiff and/or other recipients had not authorized the faxes' transmission by prior express invitation or permission).

40. Even if Defendants are not alter-egos of each other, Jorns is still liable for the conduct giving rise to or constituting the violation under the TCPA on other grounds. First, Zen Life, acting as Jorns' agent, sent the faxes on Jorns' behalf with Jorns' full knowledge and endorsement. Second, under general principles of vicarious liability, Jorns provided Zen Life

actual or apparent authority to market Jorns' services (including sending the marketing faxes at issue), or otherwise ratified Zen Life's issuance of these blast marketing faxes advertising Jorns' services.

41. Prairie Pointe therefore alleges that Defendants violated 47 U.S.C. § 227 and 47 C.F.R. § 64.1200.

42. Prairie Pointe suffered damages from the submission of these faxes, including but not limited to invasion of privacy, annoyance, the use and depletion of toner and ink, tying up of the fax line (preventing it temporarily from receiving legitimate fax communications), and the diversion of time and attention to the fax.

43. Indeed, fax transmission is a HIPAA-complaint means for medical providers to send and receive personal health information. It is therefore important to medical providers, like the Plaintiff, to keep these lines open and uncluttered in the interest of patient care.

## CLASS ACTION ALLEGATIONS

44. Pursuant to Fed. R. Civ. P. 23, Prairie Pointe brings this action on behalf of a putative Class of individuals defined as follows:

> All persons, natural or otherwise, in the United States and its territories who, (1) from October 12, 2018 to the present; (2) were sent one or more telephone facsimile transmissions by or on behalf of Jorns and Associates, LLC or Zen Life Holdings, Inc.; (3) which advertised the commercial business services offered by Jorns and Associates, LLC, including providing assistance in claiming employee retention tax credits ("ERC"); (4) and which either:
>
> > (a) did not advise that the sender's failure to comply within 30 days to a request to stop sending such faxes is unlawful; and/or
> >
> > (b) failed to set forth the requirements for an opt-out request stated in 47 C.F.R. 64.1200(a)(4)(v); and/or
> >
> > (c) failed to include both a fax number and a telephone number for the submission of opt-out requests.

> Excluded from the Class are: (1) Jorns and Associates, LLC, Zen Life Holdings, Inc. and any entity in which Jorns and Associates, LLC or Zen Life Holdings, Inc. has a controlling interest, and their legal representatives, officers, directors, assignees, and successors, and any co-conspirators; and (2) any judge or justice to whom this action is assigned, together with any relative of such judge or justice within the third degree of relationship, and the spouse of any such person.

Plaintiff reserves the right to amend this proposed class definition and to pursue certification under an amended class definition(s) as warranted.

45. Prairie Pointe seeks certification of both a Rule 23(b)(3) damages class (for completed violations of the TCPA) and a Rule 23(b)(2) declaratory and injunctive relief class (as to ongoing or future violations of the TCPA by Defendants).

46. Prairie Pointe does not know the exact number of members in the Class, but on information and belief, the number of Class members at minimum is in the hundreds.

47. Prairie Pointe and all members of the putative Class have been harmed by Defendants' acts, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their paper and ink, and the intrusion on their facsimile that occupied it from receiving legitimate communications.

37. Upon information and belief, Prairie Pointe alleges that noncompliant facsimile advertisements sent on behalf of the Defendants to advertise their products and services have been transmitted to tens and indeed hundreds, if not thousands, of telephone facsimile machines in Kansas and other states through an intentional and persistent course of conduct. Each such transmission constitutes a separate violation of the TCPA. Because the Class members are dispersed and are believed to number in the hundreds if not thousands, individual joinder is impractical in satisfaction of Fed. R. Civ. P. 23(a)(1). The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

38. Prairie Pointe's claims are typical of the claims. of the Class, as required by Fed. R. Civ. P. 23(a)(3), in that Prairie Pointe received an unsolicited facsimile advertisement from Defendants advertising goods and services for a commercial purpose during the proposed Class Period, the claims of Plaintiff and the Class arise from the same course of conduct by Defendants, and the relief sought is common.

39. The factual and legal bases of Defendants' misconduct are common to all members of the Class and represent a common cause of injury to Prairie Pointe and the putative Class members.

40. Numerous questions of law and fact are common to the putative Class and predominate over questions affecting only individual Class members, as required by Fed. R. Civ. P. 23(a)(2) and 23(b)(3). Such common questions including, but are not limited to:

   (1)   Whether Defendants had a business practice of sending unsolicited facsimile advertisements for its commercial goods and services in violation of the TCPA;

   (2)   Whether the unsolicited facsimile advertisements sent by Defendants contained an Opt-Out Notice that complies with the requirements of 47 C.F.R. 64.1200(a)(4)(iii), (iv), and (v);

   (3)   Whether Defendants harmed Prairie Pointe and the Class;

   (4)   Whether Prairie Pointe and the Class are entitled to damages and, if so, in what amount; and

   (5)   Whether Prairie Pointe and the Class are entitled to equitable and/or injunctive relief.

41. The Class is ascertainable, as the Class is defined using objective criteria and Class Members who received unsolicited facsimile advertisements from Defendants are easily identifiable based on existing telephone and other records maintained by and/or under the control of Defendant tracking their blast fax marketing activity.

48. Prairie Pointe will fairly and adequately represent and protect the interests of the Class, as required by Fed. R. Civ. P. 23(a)(4). Moreover, Prairie Pointe has retained counsel with substantial experience in the prosecution of nationwide class actions. Prairie Pointe and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so. Neither Prairie Pointe nor its counsel has any interests adverse to those of the Class.

49. As to Rule 23(b)(2), Defendants have acted and continue to act in a manner common to the Class, namely the continued mass distribution of faxes that are non-compliant with the TCPA, such that equitable relief on a class basis is warranted.

## CAUSES OF ACTION

### FIRST COUNT

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

50. Prairie Pointe incorporates by reference the foregoing and subsequent paragraphs of this Complaint as if fully stated herein.

51. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

52. Defendants' violations of the TCPA alleged herein were knowing and willful.

53. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Prairie Pointe and each member of the Class are entitled to damages of at least $500 per violation, which may be trebled to $1,500 per violation under 47 U.S.C. § 227(b)(3) for knowing and willful violations.

54. Prairie Pointe and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Prairie Pointe and Class members are also entitled to an award of attorneys' fees and costs.

55. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Prairie Pointe and Class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

56. Prairie Pointe and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

57. Defendants are both liable for the reasons set forth above, either directly, as alter egos, or through principles of agency, ratification, and other forms of vicarious liability.

**SECOND COUNT**

**CIVIL CONSPIRACY TO VIOLATE THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.**

58. Prairie Pointe incorporates by reference the foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

59. Defendants agreed among themselves to violate the TCPA and injure Prairie Pointe and Class members by conducting an illegal facsimile advertisement campaign to encourage Kansas residents to purchase Defendants' products and services.

60. Defendants created a website, directed and approved a facsimile to be sent to unsuspecting recipients, supervised the transmission thereof, and/or paid for these services, achieving the outcome of generating awareness of their services.

61. Defendants met in person and/or communicated by phone and email to achieve the objectives of the conspiracy.

62. Prairie Pointe and Class members were injured by the conspiracy in the form of the annoyance, burden, time, and expense of dealing with the unwanted, illegal facsimiles.

## **PRAYER FOR RELIEF**

WHEREFORE, Prairie Pointe respectfully requests that the Court grant Prairie Pointe and all putative Class members the following relief:

(1) An order certifying this case as a class action under Rule 23, including Certification of an appropriate Class(es) or Subclass(es) (subject to any further amendment or tailoring of an appropriate class definition) under Rules 23(b)(2) (for declaratory and injunctive relief) and Rule 23(b)(3) (for damages relief), including an appointment of Prairie Pointe as class representative and undersigned counsel as class counsel.

(2) Declaratory relief that Defendants' faxes violated and continue to violate the TCPA, along with associated injunctive relief prohibiting violations of the TCPA by Defendants in the future;

(3) Under Count I, judgment in favor of Prairie Pointe and the Class against Defendants, in an amount of $500.00 for each fax transmission in violation of the Telephone Consumer Protection Act, as well as trebling to $1,500 per violation for willful and knowing violations.

(4) Under Count II, appropriate relief to the extent allowable by law, including but not limited to damages, declaratory relief, and injunctive relief.

(5) An award of attorneys' fees and costs to counsel for Prairie Pointe and the Class; and

(6) Such other relief as the Court deems just and proper.

Respectfully Submitted by:

BEAM-WARD, KRUSE, WILSON & FLETES, LLC

/s/ Richard S. Fisk
RICHARD S. FISK, KS # 23712
8645 College Boulevard, Suite 250
Overland Park, Kansas 66210
(913) 339-6888/ (913) 339-9653 (Fax)
rfisk@bkwflaw.com

Joe P. Leniski, Jr. (TN Bar. No. 22891)*
Anthony Orlandi (TN Bar No. 33988)*
BRANSTETTER, STRANCH & JENNINGS, PLLC
The Freedom Center
223 Rosa Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Email:  joeyl@bsjfirm.com
         aorlandi@bsjfirm.com

*Admitted pro hac vice*

*Attorneys for Prairie Pointe and the Proposed Class*